**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
                              :
ROBERT MCGEE, et al.,         :
                              :   CIVIL ACTION NO. 08-520 (MLC)
     Plaintiffs,              :
                              :   MEMORANDUM OPINION
     v.                       :
                              :
STIHL INCORPORATED, et al.,   :
                              :
     Defendants.              :
_____:
```

**COOPER, District Judge**

  This matter comes before the Court on the motion ("Motion")
of the plaintiffs, Robert McGee ("McGee") and Tiffany McGee
(together with McGee, "Plaintiffs"), for entry of judgment in
their favor as to certain legal issues.  (Dkt. entry no. 73, Pl.
Mot.)  The defendants Stihl Incorporated and Andreas Stihl AG &
Co. ("Defendants") oppose the Motion.  (Dkt. entry no. 92, Defs.
Opp'n.)  The Court heard oral argument on the motion on September
21, 2011.

  This Memorandum Opinion addresses two issues raised by
Plaintiffs in their motion:  whether Defendants are barred from
(1) raising the defense of comparative negligence, and (2)
arguing that McGee's employer was negligent.  For the reasons
that follow, the Court will grant in part and deny in part the
relief sought by Plaintiffs as to these two issues.  The
remaining relief sought by Plaintiffs in the Motion will be
denied without prejudice, to be resolved following resolution of

the pending separate motions to preclude Plaintiffs' experts
(dkt. entry nos. 74, 75, and 76), as the Court indicated at oral
argument.  (Dkt. entry no. 104, 9-21-11 Hr'g Tr. at 124:1-13,
125:15-18.)

## BACKGROUND

This is a products liability action.  Plaintiffs allege that
McGee, while working as a labor foreman on a construction site in
the course of his employment with Joseph Jingoli & Son
("Jingoli"), suffered severe facial lacerations when a Stihl TS
400 cut-off machine "kicked back" as he used it to cut plastic
pipe.  (Dkt. entry no. 1, Rmv. Not., Ex. C, 2d Am. Compl. at ¶¶
1-3, 19-21.)[1]  Plaintiffs allege that the TS 400 was defective
with respect to its design, manufacture, and failure to include
necessary warnings and instructions both on the TS 400 itself and
in the user's manual.  (Id. at ¶¶ 23-24.)  Plaintiffs therefore
bring causes of action for strict liability and breach of
warranty, and Tiffany McGee brings an action for loss of
consortium.  (Id. at ¶¶ 27, 35, 83-86.)  They assert that the TS

---

[1] Plaintiffs actually allege that the product in question is
a "saw," but Defendants state that the equipment in question is a
Stihl TS 400 "handheld, gasoline-powered cut-off machine, not a
'saw.'" (Dkt. entry no. 73, Pl. Stmt. of Material Facts at §§ 5-
6, 12; dkt. entry no. 92, Defs. Counter-Stmt. of Material Facts
at ¶ 5.)  Defendants further contend that there "is no reliable
evidence in this record regarding what term or terms are commonly
used to describe cut-off machines."  (Defs. Counter-Stmt. of
Material Facts at ¶ 5.)  Thus, we will refer to the equipment
herein as the "TS 400."

400 is dangerously defective when used with blades other than those intended to be used with it.  (Id. at ¶¶ 66-69.)

Defendant Stihl Incorporated, in its Answer to the Second Amended Complaint, contends that (1) "Plaintiff was comparatively negligent, and . . . [his] damages shall be reduced and diminished by his percentage of negligence," and (2) "[a]ny damages allegedly sustained by plaintiff were the result of the acts, omissions and/or negligence of other persons and/or parties over whom [Stihl Incorporated] had no control or authority." (Dkt. entry no. 8, Stihl Inc. Answer at 13.)  Defendant Andreas Stihl AG & Co. asserts identical affirmative defenses.  (Dkt. entry no. 12, Andreas Stihl AG & Co. Answer at 14.)

Plaintiffs seek to bar Defendants from raising these defenses.  They rely on the Supreme Court of New Jersey's ruling in Suter v. San Angelo Foundry & Machine Co., 81 N.J. 150 (1979), superseded by statute on other grounds, N.J.S.A. § 2A:58C-3a(2), which established a rule on public policy grounds that where an employee has no meaningful choice in the workplace of performing a task with provided equipment, such an employee is not liable for contributory negligence.  (Dkt. entry no. 73, Pl. Br. at 1-2.)  Plaintiffs also argue that Defendants should be foreclosed from arguing before a jury that the negligence of McGee's employer, Jingoli, caused McGee's injuries, because McGee would be barred by the New Jersey Workers' Compensation Act, N.J.S.A. §

3

34:15-8, from bringing a negligence claim against Jingoli. (Id. at 34-36.)

Defendants contend that similar arguments were raised and rejected in a case also involving a TS 400 and a similar injury, Stout v. STIHL Inc., et al., No. HUD-L-3826-06 (N.J. Sup. Ct., Law Div.). (Defs. Opp'n at 1-3.) Defendants dispute the applicability of the Suter doctrine on the basis that McGee had a meaningful choice not to use the TS 400 in the manner he did, namely, with an unauthorized blade, to use a different piece of machinery to complete his task, or to ask another Jingoli employee to cut the pipe instead of doing it himself. (Id. at 4-7.) Defendants thus argue that McGee not in the position contemplated by Suter: an employee "engaged at his assigned task on a plant machine," and was not compelled to use the TS 400, such that contributory negligence should not be considered. (Id. at 7.) Defendants further contend that evidence of Jingoli's conduct is admissible on the issue of proximate cause. (Id. at 34.)

**DISCUSSION**

**I.  Comparative Negligence of McGee**

**A.  New Jersey Statute**

New Jersey's Comparative Negligence Act provides:

Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or

4

> injury to person or property, if such negligence was
> not greater than the combined negligence of the persons
> against whom recovery is sought.  Any damages sustained
> shall be diminished by the percentage sustained of
> negligence attributable to the person recovering.

N.J.S.A. § 2A:15-5.1.  The finder of fact is to determine (1) the
full amount of damages that would be recoverable by the injured
party regardless of any consideration of negligence or fault,
then (2) the extent, in the form of a percentage, of each party's
negligence or fault.  N.J.S.A. § 2A:15-5.2(a).  The purpose of
the Comparative Negligence Act was "to ameliorate the harshness
of the common-law contributory negligence bar to recovery, and
permit a plaintiff to recover even though he or she may be
negligent to some degree."  Burt v. W. Jersey Health Sys., 771
A.2d 683, 688 (N.J. App. Div. 2001); see Suter, 81 N.J. at 161.

     The Comparative Negligence Act generally applies in strict
liability actions.  Gennari v. Weichert Co. Realtors, 148 N.J.
582, 608-09 (1997); Suter, 81 N.J. at 164, 168.  A plaintiff's
fault is an affirmative defense in a strict liability action if
his or her conduct constitutes an "unreasonably and voluntary
exposure to a known risk."  Lewis v. Am. Cyanamid Co., 155 N.J.
544, 558-59 (1998).  The Suter case constitutes an exception to
this rule.

     **B.   Suter Decision**

     Suter involved a sheet metal worker who brought a products
liability action against the manufacturer of an industrial sheet

metal rolling machine after his hand was caught in the cylinders of the machine.  81 N.J. at 154.  The trial court charged the jury on strict liability, and instructed the jury that the plaintiff would be liable for contributory negligence if he had not exercised the degree of care which a reasonably prudent person would have exercised under the circumstances.  Id.  The jury found the plaintiff 50% at fault, and the plaintiff appealed the trial court's application of the comparative negligence doctrine.  Id. at 154-55.

The Suter court recognized that "the Comparative Negligence Act is applicable in strict liability to those situations in which contributory negligence would have been a defense."  81 N.J. at 177.  However, it determined that, as a matter of public policy, "an employee engaged at his assigned task on a plant machine . . . has no meaningful choice" whether to encounter a known danger, such that "irrespective of the rationale that the employee may have unreasonably and voluntarily encountered a known risk . . . such employee is not guilty of contributory negligence" as a matter of law with respect to injuries incurred in the course of working at his assigned task.  Id. at 167.  In such cases, "comparative negligence does not come into play."  Id. at 168.

**C.   Court's Ruling on Issue of Comparative Negligence**

We find Defendants' proposed interpretation of the Suter rule unsuitably narrow.  In Suter, the plaintiff had purchased the machine at issue himself on behalf of the company, of which he was a part owner; he had operated the machine "probably a thousand times" over an eight-year period; and he was in charge of the operation at the time of the accident.  81 N.J. at 165. McGee, an employee of Jingoli serving as an assistant superintendent at the time of his accident, had been assigned the task of cutting plastic pipe, "together with his crew," and used the same configuration for the TS 400 he and the crew members had used on "many previous occasions without incident" to do so. (Pl. Br. at 5-6; see dkt. entry no. 73, Packin Cert., Ex. 3, Pl. Dep. at 8:10-14; id., Ex. 27, Pl. Dep. at 10:7-15; id., Ex. 56, Pl. Dep. at 169:5-22; id., Exs. 85-91.)

We are not persuaded by Defendants' argument that because McGee was "the assistant superintendent on that job," and apparently could have assigned a laborer to do the task, he does not fall within the Suter rule's protection, in light of the Suter plaintiff's (1) part ownership of the company for which he worked, and (2) his supervisory position.  (9-21-11 Hr'g Tr. at 8:6-9.)  McGee stated at his deposition that sometimes he would use the TS 400 to cut pipe at the job site, and sometimes people working under him did it. (See Packin Cert., Ex. 61, Pl. Dep. at

77:12-20; accord id., Ex. 66, DuBois Dep. at 129:1-9 (stating
that he is "used to seeing everybody [at the job site] pitching
in and everybody . . . helping out").)  McGee also stated that on
the morning of the accident, he did some paperwork in a trailer
on the job site, but "for the most part . . . was probably out in
the field with the guys. . . . Supervising the excavation and the
installation of the pipe," and operating equipment.  (Defs.
Opp'n, Ex. B, Pl. Dep. at 190:23-191:21.)[2]

     "The essence of the Suter rule is that the employee had no
meaningful choice.  He either worked at his assigned task or was
subject to discipline or being labeled a troublemaker."  Tirrell
v. Navistar Int'l, Inc., 591 A.2d 643, 648 (N.J. App. Div. 1991)
(quoting Crumb v. Black & Decker U.S., Inc., 499 A.2d 530, 533
(N.J. App. Div. 1985)); but see Glendenning v. WGM Safety Corp.,
Inc., 795 F.Supp. 720, 722-23 (D.N.J. 1992) (observing that the
Crumb and Tirrell courts' discussion of "meaningful choice" in
applying the Suter rule "never discussed what was meant by
'meaningful choice' and was 'not helpful,'" respectively).
Ultimately, what is meant by "meaningful choice" is not as
important as the "overriding rationale" for the Suter rule,

---

     [2] McGee appears to have held an intermediate supervisory
position, in that there was a superintendent of the project, Ron
Brown; a supervisor for the project, Dion Roman, who was present
at the scene of the accident; and a foreman, Steve Caldwell, to
whom the crew of laborers reported and who in turn reported to
McGee.  (Packin Cert., Ex. 67, Caldwell Dep. at 134:15-135:25;
Defs. Opp'n, Ex. C, Roman Dep. at 7:24-8:6.)

"namely that 'it would be anomalous to hold that defendant has a duty to install safety devices but a breach of that duty results in no liability for the very injury the duty was meant to protect against.'" Glendenning, 795 F.Supp. at 723 (granting summary judgment in favor of plaintiff on the issue of comparative negligence and barring defendant, manufacturer of allegedly defective safety belt, from raising defense).

We find that Defendants' arguments that McGee had "meaningful choice" with respect to the "manner and means of cutting the pipe," such as using a different tool, moving the pipe to a safer position or supporting the pipe, or having someone else cut it, tend to go to the very comparative negligence of McGee that the Suter rule prohibits from consideration as a matter of public policy.  (9-21-11 Hr'g Tr. at 7:21-8:3.)  See Lyons v. Caterpillar, Inc., No. L-1594-00, 2005 WL 3358068, at *4 (N.J. App. Div. Dec. 12, 2005) ("Tirrell directs that a court cannot use a finding of meaningful choice to deny a worker the Suter prohibition on contributory negligence when the worker is injured while performing a job task."). Defendants' reliance on Coffman v. Keene Corp., 133 N.J. 581 (1993), in which the Supreme Court of New Jersey, in dicta, characterized Crumb as holding that for the Suter assigned-task doctrine to apply, an employee must be compelled to use the allegedly defective product, does not require that we find

9

otherwise.  133 N.J. at 605.  In Crumb, the plaintiff was injured
using a power saw while seated in a cross-legged position; he
testified that he chose to use that particular saw because "it
was more powerful than another saw supplied by his employer which
was in any event being used by another employee at the time."
499 A.2d at 530-31.  The Crumb court, contrary to the description
in Coffman, stated that it "need not reach the question of
compulsion for plaintiff to use the saw by employment or
otherwise."  Id. at  533.  Instead, the Crumb court held that the
trial court should not have allowed the question of the
plaintiff's comparative negligence to go to the jury, pursuant to
the Suter rule, in light of the jury's findings that (1) the
plaintiff had not disabled the lower saw guard, (2) the saw was
defectively designed, and (3) the defect was the proximate cause
of the plaintiff's injury.  Id. at 534-35.  We therefore find no
support for the concept that "compulsion" is a prerequisite to
application of the Suter rule.  Suter does not dictate a fact
analysis as to whether an employee had a "meaningful choice";
rather, it provides a rule, grounded in public policy, that an
employee engaged in an assigned task, as a matter of law, is
deemed to not have a meaningful choice whether to use equipment
provided by the employer.

Defendants also argue that the Suter rule is limited to "the
situation facing factory workers who had no meaningful choice

10

other than to operate the machinery provided to them by their employer regardless of its conditions or circumstances." (Defs. Opp'n at 3.) We reject this contention. See Tirrell, 591 A.2d at 648 (stating that "any limitation of the Suter principle to a factory setting would . . . clearly be inappropriate"). "[I]t would be ludicrous to allow a factory employee to recover but not a construction worker solely because the former works inside a building on the factory floor. It would be equally ludicrous and unjust to permit an employee to recover for injuries sustained by a freestanding, stationary machine but not a hand-held saw." Cavanaugh v. Skil Corp., 751 A.2d 564, 595 (N.J. App. Div. 1999), aff'd, 164 N.J. 1 (2000) (affirming trial court's refusal to instruct jury on comparative negligence but noting that plaintiff's conduct could be considered on the issue of proximate cause). The Suter rule has recently been stated broadly as applying to "a plaintiff injured in a workplace setting while performing an aspect of his or her job, regardless of whether the danger presented by the machine was known or unknown." Aly v. Fed. Exp., Inc., No. 04-3886, 2010 WL 3118528, at *1 (D.N.J. Aug. 5, 2010); accord Suter, 81 N.J. at 167.

The Supreme Court of New Jersey made a distinction that while "a trial court should submit the comparative-negligence defense to a jury" in the case where a "plaintiff with actual knowledge of the danger presented by a defective product

11

knowingly and voluntarily encounters that risk," even that conduct "cannot serve as a basis for a contributory-negligence defense when an employee is injured in an industrial setting while using a defective product supplied by the employer for its intended or foreseeable purposes." Johansen v. Makita U.S.A., Inc., 128 N.J. 86, 94 (1992). We find that McGee fits into the industrial setting scenario, such that Defendants will be barred from asserting that McGee was contributorily negligent at trial.[3] Evidence of McGee's conduct may, however, be admissible insofar as it goes to the issue of proximate cause. Cavanaugh, 751 A.2d at 596 (stating evidence of plaintiff's conduct in intentionally circumventing a safety device is admissible on the question of proximate cause, though not comparative negligence); Fabian v. Minster Mach. Co., Inc., 609 A.2d 487, 495-96 (N.J. App. Div. 1992).[4]

---

[3] The Court acknowledges Judge O'Connor's ruling to the contrary in the Stout case, but observes that it is not bound by that decision. (Defs. Opp'n, Ex. T, 1-19-10 Hr'g Tr., Stout v. STIHL Inc., at 19-23.) Similarly, we reject nonbinding precedent holding that where "there was at least a fact question on whether [plaintiff] had a meaningful choice," comparative fault should be charged to the jury, notwithstanding Suter. Nassy v. Patterson-Kelley Co., No. L-4119-02, 2007 WL 3119454, at *5 (N.J. App. Div. Oct. 26, 2007). (See dkt. entry no. 100, Defs. 9-23-11 Letter Br. at 3.)

[4] Plaintiffs move for summary judgment on the issue of proximate cause on the basis that if a jury finds that the TS 400 "was defective in its failure to incorporate design features that would have prevented a foreseeable misuse, proximate cause is predetermined" under New Jersey law, relying on Jurado v. W. Gear Works, 131 N.J. 375 (1993), and Aly, No. 04-3886, 2010 WL

## II.  Comparative Negligence of Jingoli

Plaintiffs also seek to bar Defendants from asserting as a defense either that (1) McGee's employer, Jingoli, was negligent in its supervision and/or training of McGee, or (2) Jingoli "knew that carbide-tipped, toothed saw blades were not intended or safe for use on cut-off saws and knew that its employees were using such blades on cut-off saws but nevertheless permitted this to take place and issued such blades to its employees," on the basis that evidence of Jingoli's negligence is barred as a matter of law.  (Pl. Br. at 34.)  Specifically, Plaintiffs contend that because any negligence action by McGee against his employer would be barred by the New Jersey Workers' Compensation Act, any claim by a defendant in a products liability action that an injured

---

3118528, at *1.  (Dkt. entry no. 93, Pl. Reply Br. at 7-8.)  As noted previously, the Court will not decide that issue at this juncture, but will revisit it at an appropriate time.  We observe that insofar as Plaintiffs assert both design defect and failure to warn claims, <u>Jurado</u> is a design defect case, whereas <u>Fabian</u> and <u>Coffman</u>, relied on by Defendants, suggest that evidence of McGee's or Jingoli's negligence respectively may be admissible as to the issue of proximate cause in a failure to warn case.  <u>Jurado</u>, 131 N.J. at 388 ("In some situations, . . . the issue of proximate cause is predetermined by the finding that the product is defective solely because of the manufacturer's failure to protect against a foreseeable misuse."); <u>Coffman</u>, 133 N.J. at 608; <u>Fabian</u>, 609 A.2d at 496.  Defendants contend that the category of McGee's claims is unimportant for purposes of whether the question of proximate cause should go to a jury, pursuant to <u>Leja v. Schmidt Mfg., Inc.</u>, No. 01-5042, 2011 WL 3684845, at *2 (Aug. 22, 2011).  <u>But see</u> <u>Lewis</u>, 155 N.J. at 564 ("A claim for failure-to-warn differs from one based on a design defect.").  (Dkt. entry no. 103, Defs. 10-23-11 Letter Br. at 3-4.)

worker's employer was negligent is barred as a matter of law. (Id. at 35.)

Defendants respond that this argument is "more properly an evidentiary issue for trial." (Defs. Opp'n at 34.) They contend that even though Jingoli is not a party to this action, they are entitled under New Jersey law to introduce evidence about Jingoli's negligent conduct, "if relevant to the occurrence of plaintiff's accident." (Id.) Jingoli's negligence, Defendants contend, may have acted as a superseding cause of McGee's accident, which goes to the Plaintiffs' burden of establishing proximate cause, such that it should be permitted to present to the jury "what Jingoli did or did not do to prevent [McGee's] injuries." (Id. at 38.)

### A. Relationship Between Workers' Compensation Bar and Comparative Negligence Act

Plaintiffs rely on the fact that the Comparative Negligence Act "restricts the assessment of negligence to 'the parties to the suit,'" such that the alleged negligence of non-party employers, who are not subject to a products liability action by virtue of the workers' compensation bar, should not be submitted to a jury. (Pl. Br. at 36.)

The Comparative Negligence Act provides that "[i]n all negligence actions and strict liability actions in which the question of liability is in dispute, . . . the trier of fact shall make the following as findings of fact: . . . . The extent,

in the form of a percentage, of <u>each party's</u> negligence or fault.
. . . [T]he total of all percentages of negligence or fault of
<u>all parties to a suit</u> shall be 100%."  N.J.S.A. § 2A:15-5.2
(emphasis added).  In <u>Jarrett v. Duncan Thecker Associates</u>, 417
A.2d 1064, 1065-66 (N.J. Super. 1980), the trial court noted that
the Comparative Negligence Act "clearly limits the jury's
deliberations to parties to the suit, rather than parties to the
transaction," and denied the defendant contractor's application
for a special instruction that the jury to consider and apportion
the negligence of the plaintiff's employer, notwithstanding that
trial testimony was presented from which the jury could have
concluded the employer was negligent and the employer's
negligence contributed to the cause of the accident.[5]

The Supreme Court of New Jersey considered the question of
whether a third-party tortfeasor may seek contribution or
indemnification against a non-party employer with respect to a
judgment obtained by an employee against the tortfeasor, and
determined that it could not.  <u>Ramos v. Browning Ferris Indus. of</u>
<u>S. Jersey, Inc.</u>, 103 N.J. 177 (1986).  It held that the trial
court committed no error in not submitting the employer's
negligence to the jury, because of the language of the
Comparative Negligence Act, which "the Legislature might have

---

[5] The employer, of course, was not a party to the suit by
reason of the workers' compensation bar preventing direct suit.
<u>Jarrett</u>, 417 A.2d at 1066.

15

drafted . . . to permit jurors to evaluate the percentage of negligence attributable to an absent employer," but did not.  Id. at 193.  Thus, the Ramos court held that "[u]nder the Comparative Negligence Act, a party who is compelled 'to pay more than such party's percentage share may seek contribution from the other joint tortfeasors,'" but because an employer cannot be a joint tortfeasor, it "is not subject to contribution liability under the Comparative Negligence Act."  103 N.J. at 193-94; see also Stephenson v. R.A. Jones & Co., Inc., 103 N.J. 194, 199 (1986) ("As explained in Ramos, . . . an employer is not liable in tort to an injured employee and cannot be considered a joint tortfeasor.").  Cf. Brodsky v. Grinnell Haulers, Inc., 181 N.J. 102, 115-16 (2004) (referring to continued viability of Ramos rule that workers' compensation immunity of employer bars a jury from assigning fault to employer, but distinguishing a joint tortfeasor's discharge in bankruptcy, holding that "the trier of fact must determine the percentage of fault or negligence of a party dismissed from a negligence action following that party's discharge in bankruptcy," whereas "an employer cannot be a party to a negligence action and thus can never be considered a joint tortfeasor subject to the Comparative Negligence Act") (emphasis added).

B.   "Empty Chair" Defense

The Brodsky court observed that in some contexts, "the Appellate Division has noted that a defendant is allowed to prove that a non-party was the sole proximate cause of the plaintiff's harm—the so-called 'empty chair' defense in which a defendant shifts blame to a joint tortfeasor who is not in the courtroom. . . . The practical effect of a defendant proving that the 'empty chair' was responsible for the accident is that the plaintiff will receive no recovery." Id. at 114 (citing Fabian, 609 A.2d 487). Defendants rely on Fabian and other cases permitting an "empty chair defense" in arguing that they are entitled to introduce evidence about Jingoli's negligent conduct. (See Defs. Opp'n at 34-35.)

Fabian suggests that it is "not improper" for a defendant manufacturer to argue that its conduct was not a substantial contributing factor to a plaintiff's accident by "focus[ing] the jury's attention upon the plaintiff's duty to prove that defendant's conduct or defective product was a proximate cause of the accident," thereby "shift[ing] causal blame to another who is not legally liable in the suit." Fabian, 609 A.2d at 495. Thus, the Fabian court ruled that it was permissible for the defendant manufacturer to offer evidence at trial regarding "repairs and maintenance" of the machinery in question, "not to show delegation of duty, but both to dispute proximate cause and to

17

suggest that some agency other than defendant may have been responsible for whatever caused" the machinery to malfunction. Id.

Defendants wish to introduce evidence at trial that Jingoli "permitted the TS 400 to be substantially altered by ordering and supplying some of its employees, including McGee, with unauthorized saw blades for the purpose of mounting them on cut-off machines to cut pipe." (Defs. Opp'n at 35.) They further contend that it was "reckless" for Jingoli to ignore the manufacturer's warnings against the use of certain blades, fail to instruct its employees in the proper use of the TS 400, and to permit McGee to use the TS 400 with a saw blade to cut pipe. (Id. at 36.)

Defendants rely on Coffman in support of their position, which states:

> [I]n a given case, the defendant may be able to establish that the employer's conduct, not the failure to warn, was the cause in fact of the injuries attributable to the harmful product. An employer's conduct, in either thwarting effective dissemination of a warning or intentionally preventing employees from heeding a warning, may be a subsequent supervening cause of an employee's injury that will serve to break the chain of causation between manufacturer and employee. See Brown v. U.S. Stove, 98 N.J. 155, 171-75 (1984). Thus, if an employer's subsequent course of misconduct is an independent cause of an employee's injury, the absence of a warning itself may have too remote a causal connection to the injury. Id. at 174.

Coffman, 133 N.J. at 608.

###### C.   Court's Ruling on Issue of Jingoli's Negligence

The Court finds that both Ramos and Butler v. PPG Industries, Inc., 493 A.2d 619, 621-22 (N.J. App. Div. 1985), instruct that Defendants should be barred from presenting evidence of Jingoli's alleged negligence in supervising and training McGee and other employees with regard to use of the TS 400.  The Court has reviewed the exhibits submitted by Defendants in support of their argument that Jingoli was negligent, and finds that they should be rejected insofar as they are offered as a superseding proximate cause that would relieve Defendants of liability.  See Butler, 493 A.2d at 621 (finding that trial court properly barred evidence of employer's conduct because the "public interest in assuring that defective products are not placed into the channels of trade imposes a duty on the manufacturer to take feasible steps to render his product safe; the manufacturer may not rely on 'the haphazard conduct of the ultimate purchaser' to remedy or protect against defects for which he is responsible") (quoting Bexiga v. Havir Mfg. Corp., 60 N.J. 402, 410 (1972)).  In Butler,

> the proffer that [the employer's] alleged negligence
> was a proximate cause of the accident would not have
> exculpated [the manufacturer].  Where the original
> defect, although not the sole cause of the accident,
> constitutes a contributing or concurrent proximate
> cause in conjunction with the subsequent conduct of the
> purchaser, the manufacturer remains liable.  In order
> to exculpate itself, the manufacturer must prove an
> intervening superseding cause or perhaps some other

> sole proximate cause of the injury.  Where, as here,
> the allegation is that the purchaser failed to take
> reasonable steps to protect against the defect created
> by the manufacturer, <u>a jury will not be permitted to
> infer that the purchaser's negligence was the exclusive
> proximate cause of the accident</u>.

<u>Id.</u> at 622 (internal citations omitted) (emphasis added).

The Court finds inapposite the approach taken in <u>Leja v. Schmidt Manufacturing, Inc.,</u> which held that while a jury could not apportion liability between the defendant manufacturer and a third-party defendant distributor alleged to have removed warning labels, because the manufacturer would, "as a matter of law, remain liable for Plaintiff's injuries even if the jury finds [the distributor's] removal of the warning labels to be a proximate cause of the accident," nevertheless, the manufacturer was permitted to argue at trial that the distributor's "removal of the machine's warning labels was the sole proximate cause of the accident." <u>Leja</u>, 2011 WL 3684845, at *10-11.  The <u>Leja</u> ruling does not involve the conduct of an employer immune from suit under the Workers' Compensation Act, and therefore does not invoke the same policy considerations at play in <u>Ramos</u> and <u>Butler</u>.  <u>See Leja v. Schmidt Mfg., Inc.,</u> No. 01-5042, 2008 WL 906252, at *1, *5 (D.N.J. Mar. 31, 2008).  The alleged joint tortfeasor distributor in <u>Leja</u> had at one point been a party to the suit, unlike Jingoli here.  <u>Leja v. Schmidt Mfg., Inc.,</u> No. 01-5042, 2010 WL 1372226, at *4 (D.N.J. Mar. 31, 2010) (stating

that plaintiff voluntarily dismissed claims against distributor
pursuant to a settlement agreement).  Furthermore, the suggestion
that the alleged conduct of Jingoli was the <u>sole</u> proximate cause
of McGee's accident utterly lacks support in the record.  <u>See</u>
<u>Butler</u>, 493 A.2d at 622.

The "empty chair defense" referred to by Defendants is not
helpful to the ultimate resolution of issues with respect to the
design defect aspect of this case.  If Plaintiffs ultimately
prove that the TS 400 is defectively designed, then they will be
entitled to a predetermination of the proximate cause issue,
pursuant to <u>Jurado</u>.  <u>See</u> 131 N.J. at 388-89.  Conversely, if the
trier of fact determines that the TS 400 is not defectively
designed, then Defendants will not be liable.  <u>See</u> <u>Truchan v.</u>
<u>Nissan Motor Corp.</u>, 720 A.2d 981, 988 (N.J. App. Div. 1998).  The
same cannot be said, however, with respect to the failure to warn
aspect of this case.  <u>See</u> <u>supra</u> n.4; <u>see also</u> <u>Coffman</u>, 133 N.J.
at 608 ("An employer's conduct, in either thwarting effective
dissemination of a warning or intentionally preventing employees
from heeding a warning, may be a subsequent supervening cause of
an employee's injury that will serve to break the chain of
causation between manufacturer and employee").

Defendants therefore will not be permitted to introduce
evidence regarding the alleged negligence of Jingoli in order to
dispute that the alleged design defects of the TS 400 proximately

caused McGee's injuries.  It may remain relevant, however, as to the issue of foreseeable misuse, which goes to the question of whether the TS 400 is in fact defective under the Products Liability Act.  Furthermore, Defendants will be permitted to present evidence on Jingoli's conduct with respect to the failure to warn aspect of the case, insofar as it appears that there is a material factual dispute as to, e.g., the presence and longevity of warning labels affixed to the TS 400 and their propensity to come off due to power-washing.

### CONCLUSION

For the foregoing reasons, the Motion will be granted in part and denied in part.  The Court will issue an appropriate Order.


s/ Mary L. Cooper

**MARY L. COOPER**
United States District Judge


Dated:    December 7, 2011

22